```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| STEPHANIE KANTER, on behalf of the ESTATE OF ROBERTA J. SCHWARTZ,<br><br>            Plaintiff,<br><br>    v.<br><br>THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES,<br>            Defendant. | Civil Action<br>No. 07-4361 (JBS)<br><br>**OPINION** |

**APPEARANCES:**

Steven K. Mignogna, Esq.
Ken Lackey, Esq.
ARCHER & GREINER
One Centennial Square
Haddonfield, NJ 08033
    Attorneys for Plaintiff Stephanie Kanter
    on behalf of the Estate of Roberta J. Schwartz

Catherine Sakach, Esq.
Care E. Leheny, Esq.
WOLF, BLOCK SCHORR AND SOLIS-COHEN LLP
1940 Route 70 E.
Suite 200
Cherry Hill, NJ 08003
    Attorneys for Defendants

**Simandle, District Judge:**

   This matter is before the Court on the motion [Docket Item 7] by Defendants AXA Equitable Life Insurance Company (formerly known as the Equitable Life Assurance Society of the United States) ("Equitable"), AXA Financial Inc., and fictitious John Doe and XYZ entities to dismiss Plaintiff Stephanie Kanter's

Amended Complaint.[1]  The Court heard oral argument on the motion and reserved decision.  For the reasons explained below, the Court shall grant the motion to dismiss for failure to comply with the applicable statutes of limitation.

## I.   BACKGROUND

The facts set forth here are those alleged in the Amended Complaint.[2]  Plaintiff Stephanie Kanter, a resident of Florida, is one of the two beneficiaries of the Estate of Roberta Schwartz, her mother.  Roberta Schwartz was intentionally killed by her former husband, Stephen Schwartz, a dentist who enrolled in Equitable's retirement plan for American Dental Association group members ("the Annuity") under which Stephen Schwartz made annual payments to Equitable in exchange for a guaranteed monthly payment to Stephen Schwartz, to commence on his retirement date of September 1, 2006. (Am. Compl. ¶ 11.)  The Annuity contract also provides the right to receive an accrued cash value, upon

---

[1] Only Equitable is listed on the docket as a defendant in this matter.

[2] The Amended Complaint refers to several exhibits that were received as attachments:
Exhibit A:   Annuity contract
Exhibit B:   February 10, 1997 letter to Equitable and February 4, 1997 Order to Show Cause
Exhibit C:   July 23, 1999 Order to Show Cause and letter to Equitable
Exhibit D:   Opinion of Judge Cook in <u>Wasserman v. Schwartz</u>, 364 N.J. Super 399 (Law Div. 2001).

death, disability, withdrawal, or termination by Stephen Schwartz. (Am. Compl. ¶ 12.) The accrued cash value consists of contributions plus accrued interest minus the sum of withdrawals and applicable fees. (Id.) Stephen and Roberta Schwartz were married on August 18, 1985. (Am. Compl. ¶ 13.) Stephen Schwartz intentionally killed Roberta Schwartz on March 24, 1996. (Am. Compl. ¶ 14.) The annuity was in Stephen Schwartz's name only.

Beginning on February 10, 1997, Equitable received notice that N.J. Stat. Ann. § 3B:7-1.1 to 3B:7-7, commonly referred to as the Slayer Act, may be applicable to the Annuity. (Am. Compl. ¶ 15.) Under cover of letter dated February 10, 1997, Equitable received an Order to Show Cause dated February 4, 1997, that prohibited Stephen Schwartz and his agents or servants "from in any way liquidating, dissipating, transferring, encumbering or in any other way diminishing all assets in which he asserts or has any interest for any reason whatsoever without prior Order of the Court." (Am. Compl. ¶ 16.) The February 10, 1997 letter enclosed the Order to Show Cause and the letter "specifically request[ed] that [Equitable] put a freeze on all accounts in Dr. Schwartz's name, alone or with others." (Id.)

Stephen Schwartz pleaded guilty to aggravated manslaughter on July 23, 1999. (Am. Compl. ¶ 17.) Equitable then received a second Order to Show Cause, dated July 23, 1999, that similarly warned that the Slayer Act potentially applied to

the Annuity and that restrained Stephen Schwartz and his agents or servants from liquidating, dissipating, transferring or in any other way diminishing any assets in which he had an interest, without prior Order of the Court. (Am. Compl. ¶ 18.)

The restraints imposed by the foregoing Orders of February 4, 1997, and July 23, 1999 were dissolved on October 29, 1999. Equitable did not pay the funds into court, seek to intervene in the pending litigation, or otherwise maintain the funds. (Am. Compl. ¶ 19.)  On or about December 20, 1999, Equitable allowed Stephen Schwartz to withdraw $93,750 from the Annuity. (Am. Compl. ¶ 20.)

On September 14, 2001, judgment in the case of Wasserman v. Schwartz, 364 N.J. Super. 399 (Law Div. 2001) was entered in favor of the Estate of Roberta Schwartz ("Estate") under the Slayer Act, N.J. Stat. Ann. § 3B:7-1.1 to 3B:7-7.  (Am. Compl. ¶ 21.)  Roberta Schwartz's Estate was found entitled to a distributive share of the marital estate, including the assets in Stephen Schwartz's retirement and pension plans, such as the Annuity held with Equitable, even though those assets were titled in Stephen Schwartz's name alone.  (Id.)  The court also found the Estate entitled to an award equal to the amount of taxes that were incurred on the portion of the distribution that came from the pension or retirement accounts of Stephen Schwartz.  (Id.) One half of the marital estate was $464,898 and the amount of the

tax was $216,440 for a total award to the Estate of $681,338. (Id.) The Estate was only able to collect approximately $390,000 of the $681,338 it was awarded in the September 14, 2001 judgment. (Am. Compl. ¶ 22.)

Plaintiff Stephanie Kanter and Stacey Rosen, the two beneficiaries of the Estate, entered into an Agreement dated February 13, 2007, under which the Estate's remaining claims, if any, were assigned to them. (Am. Compl. ¶ 23.) The Agreement provided that, as between Plaintiff Kanter and Rosen, whichever beneficiary filed a proceeding of any kind to pursue any such claim of the Estate would have the exclusive rights, title and interest to that claim and any and all recovery thereon, but that party would also be exclusively responsible for all fees and costs incurred in pursuing that claim. (Id.) Plaintiff Stephanie Kanter brings this action pursuant to the assignment, under the agreement, of the Estate's interests in the Annuity.

Plaintiff seeks recovery on four counts. Count One alleges negligence and that Equitable owed a duty of reasonable care to the Estate of Roberta Schwartz when it received written notice of a claimed forfeiture or revocation under the Slayer Act and that it breached that duty when it allowed Stephen Schwartz to withdraw $93,750 from the Annuity. (Am. Compl. ¶¶ 26-27.) The Complaint further alleges that as a direct and proximate cause of Equitable's actions, the Estate of Roberta Schwartz has been

5

damaged because it was prevented from receiving the computed value of the Annuity payments to which it was entitled. (Am. Compl. ¶ 28.)

Count Two of the Amended Complaint alleges violation of the Slayer Act ("the Act"), which states, in part:

> A payor or other third party making payment or transferring an item of property or other benefit according to the terms of a governing instrument affected by an intentional killing is not liable by reason of this chapter unless prior to such payment or transfer it has received at its home office or principal address written notice of a claimed forfeiture or revocation under this chapter.

N.J. Stat. Ann. § 3B:7-7. Plaintiff claims Equitable was given written notice of a claimed forfeiture or revocation under the Slayer Act, including the two Orders that temporarily froze Stephen Schwartz's assets and barred Equitable from distributing them; that Equitable nevertheless allowed Stephen Schwartz to withdraw $ 93,750 from the Annuity; that, by virtue of the New Jersey Superior Court's September 14, 2001 decision, the assets accumulated by Stephen and Roberta Schwartz during their ten-year marriage constituted marital assets in which Roberta Schwartz had an interest, even if those assets were listed in the name of Stephen Schwartz alone and, specifically, under the Slayer Act the Annuity was included in the marital estate. Thus, Plaintiff claims, the money Equitable paid to Stephen Schwartz was a part of the marital estate which was to be returned to the Estate of

6

Roberta Schwarz and not distributed to the man who intentionally killed her.

Count Three alleges a Consumer Fraud Act violation, pursuant to N.J. Stat. Ann. § 56:8-2. Plaintiff alleges Equitable engaged in an unconscionable commercial practice when it allowed Stephen Schwartz to withdraw $93,750 after it received written notice of a claimed forfeiture or revocation under the Slayer Act. (Am. Compl. ¶ 42.)

In Count Four of the Amended Complaint, Plaintiff asserts that Equitable breached its fiduciary duties in the performance and enforcement of the Annuity contract when it allowed Stephen Schwartz to withdraw $93,750. (Am. Compl. ¶ 46.)

**II.   MOTION TO DISMISS**

   **A.   Standard**

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual

7

> allegations must be enough to raise a right
> to relief above the speculative level."

Phillips, slip op. at 17.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, ___ U.S. ___ , 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, ___ U.S. ___ , 127 S. Ct. at 1964-1965 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint
> with enough factual matter (taken as true) to
> suggest" the required element. [Twombly, 127
> S. Ct. at 1965 n.3.]  This "does not impose a
> probability requirement at the pleading
> stage," but instead "simply calls for enough
> facts to raise a reasonable expectation that
> discovery will reveal evidence of" the
> necessary element.  Id.

Phillips, 515 F.3d at 234.

Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken

into consideration.  <u>Chester County Intermediate Unit v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990). Without converting this motion to a motion to summary judgment, the "court may consider an undisputedly authentic document . . . if the plaintiff's claims are based on the document." <u>Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

> To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint.
>
> Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion--not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. <u>See</u> <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991); <u>United States v. Wood</u>, 925 F.2d 1580, 1582 (7th Cir. 1991); <u>see</u> <u>also</u> <u>Funk v. Commissioner</u>, 163 F.2d 796, 800-01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

<u>Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.</u>, 181 F.3d 410, 426-427 (3d Cir. 1999) (citations omitted).  If a court examines the transcript of a prior proceeding to find facts, it converts a motion to dismiss to a motion for summary judgment.  <u>Id.</u> at 427 n. 7.

**B.  Analysis**

Although Rule 12(b)(6) does not explicitly list the statute of limitations as a basis for granting a motion to dismiss,

> the law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).  In this case, Plaintiff alleges that Equitable distributed funds from the Annuity to Mr. Schwartz in December 1999. (Am. Compl. ¶ 20.)

Defendants argue that because more than six years passed between Equitable's distribution of funds to Stephen Schwartz and the institution of this action on August 1, 2007, the Court should dismiss the action for failure to comply with the applicable statute of limitations, which is six years for the asserted negligence, Consumer Fraud Act, Slayer Act and fiduciary duty claims.  See N.J. Stat. Ann. § 2A:14-1 (property claims have six-year statute of limitations).  According to Defendants, the applicable statute of limitations would have expired December 9, 2005, well before the Complaint was filed on August 1, 2007. Defendants further argue that the discovery rule does not toll

10

this statute of limitations because evidence adduced in the related Superior Court action shows that no later than June 29, 2001 the Estate was aware of the 1999 withdrawal of funds. Defendants argue that, therefore, even if Plaintiff had the benefit of the discovery rule, the time to bring her claims expired prior to June 29, 2007.

Plaintiff argues that the statute of limitations does not bar this action because the claim did not accrue until November 24, 2003, when it "received the last possible amount of collection proceeds from [Equitable]," which is allegedly "the date the Estate first realized it suffered an injury in the form of a deficiency in collecting Roberta Schwartz's share of the marital estate."  (Pl. Br. at 23.)  Further, Plaintiff argues, to the extent this action is considered a claim for contribution, that claim did not accrue until the judgment was entered on September 14, 2001, which is less than six years before Plaintiff filed this action.

In reply, Defendants argue that no later than July 11, 2001 (the second day of the bench trial when its expert testified in Wasserman), the Estate knew two things: (1) that the withdrawal at issue here had been made by Dr. Schwartz and (2) that there were not enough assets to satisfy the Estate if it achieved its goal of an equitable distribution of the marital estate.

11

Accordingly, Defendants argue, Plaintiff slept on her rights by failing to bring this action within six years of that date.

This Court agrees with Defendants that the statute of limitations on Plaintiff's claim began to run more than six years before it filed this action and that, therefore, the Court must grant the motion to dismiss on that ground. By, at the latest, July 11, 2001, Plaintiff was aware of the facts giving rise to this claim.

As the <u>Wasserman</u> opinion notes,

> A bench trial was conducted on June 29 and July 11, 2001, to identify and ascertain the value of all assets held by or for Stephen Schwartz' benefit, including pension or retirement plan accounts; and to determine what portion should belong to the Schwartz' marital estate, and what portion belongs solely to Stephen Schwartz. Plaintiff presented the expert testimony and report of Sharon J. Bishop, a certified public accountant [who] documented all the assets includible in the marital estate and their values [including] marital estate assets Stephen Schwartz has spent since the day he killed his wife [and accounted for] $541,099 presently held in Stephen Schwartz' name in his American Dental Association retirement plan.

<u>Wasserman v. Schwartz</u>, 364 N.J. Super. 399, 402-03 (Law Div. 2001).[3]

---

[3] The Court need not, and does not, interpret the <u>Wasserman</u> opinion to determine the facts found by that court. Instead, the Court finds only that the claims asserted in that case are so similar to the claims asserted here that there can be no argument that the claims here were equitably tolled beyond the date on which the Estate litigated the <u>Wasserman</u> case.

Thus, by the latest, on July 11, 2001, the Estate was aware of the facts underlying this claim - that Defendants permitted Mr. Schwartz to withdraw money from the Annuity on which the Estate asserted a Slayer's Act claim.  Although the Estate sought a new application of the Slayer's Act to include assets held solely in the name of the murderous spouse and it was not clear whether the Court would recognize the claim, that legal uncertainty does not toll the statute of limitations.  The claim by the Estate, which Plaintiff asserts here, arose more than six years ago under New Jersey law on claim accrual.

"[W]here a plaintiff knows of an injury and that the injury is due to the fault of another, he or she has a duty to act." Caravaggio v. D'Agostini, 166 N.J. 237, 249-50 (2001).  New Jersey "courts have generally stated that a claim accrues, for statute of limitations purposes, on 'the date on which the right to institute and maintain a suit first arose.'" County of Morris v. Fauver, 153 N.J. 80, 107 (1998) (quoting Rosenau v. City of New Brunswick, 51 N.J. 130, 137 (1968)).  "That does not mean that the statute of limitations is tolled until a plaintiff has knowledge of a specific basis for legal liability or a provable cause of action."[4]  Caravaggio, 166 N.J. at 246.  Rather, even

---

[4] At oral argument, counsel for Plaintiff attempted to convince the Court that the claim did not accrue until after the the decision in Wasserman, despite the fact that the Estate had requisite factual knowledge to assert the claims asserted here. In response to this Court's questioning of why the claim did not

under the discovery rule, the cause of action accrues when a plaintiff knows or should have known "**facts** which form the basis for a cause of action." Fauver, 153 N.J. at 109 (emphasis added). Thus the invocation and recognition of a novel legal theory do not toll the statute of limitations. The claim accrues when the injury occurs and the plaintiff knew or should have known of the injury and the party that caused it. See Caravaggio, 166 N.J. at 246 ("The question in a discovery rule case is whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another . . . It . . . require[s] knowledge not only of the injury but also that another is at fault.")

Upon examination of the Wasserman opinion, it is apparent that in instituting that action, the Estate was asserting that Defendants permitted Dr. Schwartz to withdraw money from the policies to which the Estate was entitled. Thus, its cause of action accrued on that date as to the claims asserted here. Because this Complaint was not instituted prior to July 11, 2007,

---

accrue at the time the Estate learned that Defendants had dissipated the annuity by paying Mr. Schwartz, or, at the latest, in July 2001 when the Estate's expert testified about this dissipation, counsel argued that no claim accrued until the Estate's legal theory of the case was verified by a decision. "The Estate did not know it had a claim – the Estate hoped it would have a claim because that was the argument to Judge Cooke." (Tr. at 22:19-21.) That is not the law on when a claim accrues.

the Court must grant the motion to dismiss for failure to comply with the statute of limitations.

### III. CONCLUSION

The essence of Plaintiff's claims is that Defendants should not have paid Mr. Schwartz the money in which his wife's Estate had an interest – a Slayer Act claim that accrued by July 11, 2001, when the Estate was asserting its right to that money in the Wasserman case.  Because this action was not filed before the six-year statute of limitations expired on the claims asserted here, the Court must grant the motion to dismiss.  An appropriate Order shall be entered.


**April 30, 2008**               **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                 U.S. District Judge