IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHANIE KANTER, on behalf of the ESTATE OF ROBERTA J. SCHWARTZ,<br><br>Plaintiff,<br><br>v.<br><br>THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, et al.,<br><br>Defendants. | Civil Action No. 07-4361 (JBS/KMW)<br><br>**OPINION** |

**APPEARANCES:**

Steven K. Mignogna, Esq.
Kenneth J. Lackey, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033
      Attorneys for Plaintiff Stephanie Kanter
      on behalf of the Estate of Roberta J. Schwartz

Patrick Matusky, Esq.
Catherine Sakach, Esq.
DUANE MORRRIS LLP
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08003
      Attorneys for Defendants AXA Equitable Life Insurance
      Company and AXA Financial, Inc.

**Simandle, District Judge:**

This matter is before the Court on the motion [Docket Item 37] by Defendants AXA Equitable Life Insurance Company (formerly known as the Equitable Life Assurance Society of the United States) ("AXA") and AXA Financial Inc. to dismiss Plaintiff Stephanie Kanter's Second Amended Complaint [Docket Item 35].

For the reasons explained below, the Court will grant the motion to dismiss without prejudice.

## I.    BACKGROUND

The facts set forth here are those alleged in the Second Amended Complaint or contained in undisputedly authentic underlying documents.[1]  Plaintiff Stephanie Kanter, a resident of Florida, is one of the two beneficiaries of the Estate of Roberta Schwartz, her mother.  Roberta Schwartz was intentionally killed by her husband, Stephen Schwartz on March 24, 1996.  (Second Am. Compl. ¶ 14.)  Mr. Schwartz was a dentist who enrolled in AXA's retirement plan for American Dental Association group members

---

[1]  The Second Amended Complaint refers to several exhibits that were received as attachments:

Exhibit A:     Annuity Contract between Stephen Schwartz and Equitable Life (AXA)
Exhibit B:     February 10, 1997 letter to AXA's Secaucus, New Jersey, office and February 4, 1997 Order to Show Cause
Exhibit C:     July 23, 1999 Order to Show Cause and letter to AXA's Secaucus office
Exhibit D:     Opinion of Judge Cook in Wasserman v. Schwartz, 836 A.2d 828 (N.J. Super. Law Div. 2001).

Also, the Court considers additional documents whose existence are integral to Plaintiff's claims for relief or are in the public record.  The Order of Judge Davis in Wasserman v. Schwartz (Oct. 29, 1999), dissolving the Temporary Restraining Order of July 23, 1999, was attached as Exhibit D to Defendants' motion to dismiss.  Plaintiff's Second Amended Complaint alleges the existence of a Consent Order signed by AXA and the Estate of Roberta Schwartz on October 22, 2002, which was attached as Exhibit E to Defendants' Motion to Dismiss; the Complaint also alleges the existence of a settlement between the Estate and Stephen Schwartz's estate, which was attached as Exhibit F to Defendants' Motion to Dismiss.

("the Annuity") under which Stephen Schwartz made annual payments to AXA in exchange for a guaranteed monthly payment, to commence on his retirement date of September 1, 2006. (Id. ¶ 11.)  The Annuity contract also provides the right to receive an accrued cash value, upon death, disability, withdrawal, or termination by Stephen Schwartz.  (Id. ¶ 12.)  The accrued cash value consists of contributions plus accrued interest minus the sum of withdrawals and applicable fees. (Id.)  Stephen and Roberta Schwartz were married on August 18, 1985. (Id. ¶ 13.)  Almost eleven years later, Stephen Schwartz intentionally killed Roberta Schwartz.  (Id. ¶ 14.)  The annuity was in Stephen Schwartz's name only.

AXA, a subsidiary of Defendant AXA Financial, is a financial services corporation incorporated in the state of New York with its principal place of business located at 1290 Avenue of the Americas, New York, NY.  (Second Am. Compl. ¶¶ 5, 6-9.)  In addition to its headquarters in New York, AXA maintains an office in Secaucus, New Jersey.  (Id. ¶ 10.)  On February 10, 1997, AXA received notice at its Secaucus, New Jersey, office that, pursuant to a New Jersey court order, Stephen Schwartz was temporarily restrained from withdrawing funds from his accounts. (Second Am. Compl. ¶ 15 and Ex. B.)  Under cover of letter dated February 10, 1997, the Estate sent to AXA an Order to Show Cause dated February 4, 1997, that prohibited Stephen Schwartz and his

3

agents or servants "from in any way liquidating, dissipating, transferring, encumbering or in any other way diminishing all assets in which he asserts or has any interest for any reason whatsoever without prior Order of the Court." (Id. ¶ 16.)  The February 10, 1997 letter enclosed the Order to Show Cause, which included reference to a claim against Stephen Schwartz under N.J. Stat. Ann. § 3B:7-1 et seq., and the letter "specifically request[ed] that [AXA] put a freeze on all accounts in Dr. Schwartz's name, alone or with others." (Id.)

Stephen Schwartz pleaded guilty to aggravated manslaughter on July 23, 1999. (Id. ¶ 17.)  The Estate then sent a second Order to Show Cause to AXA's Secaucus office, dated July 23, 1999, that similarly indicated that the Estate had brought Slayer Act claims against Stephen Schwartz and that restrained him from in any way diminishing any assets in which he had an interest, without prior Order of the Court. (Id. ¶ 18.)  At least one of these notices was reviewed by an AXA employee. (Id. ¶ 19.)

The restraints imposed by the foregoing Orders of February 4, 1997, and July 23, 1999, were dissolved in an order on October 29, 1999. (Oct. 29, 1999 Order, Defs.' Mot. Dismiss Ex. D.) Neither during nor after the pendency of the restraints did AXA pay the funds into court, seek to intervene in the pending litigation, or otherwise maintain the funds. (Second Am. Compl. ¶ 20.)  Approximately two months after the restraints were

dissolved, on December 20, 1999, AXA allowed Stephen Schwartz to withdraw $93,750 from the Annuity. (Id. ¶ 21.)

On September 14, 2001, the Estate's Slayer Act claims against Stephen Schwartz were decided.  Judgment in the case of Wasserman v. Schwartz, 836 A.2d 828 (N.J. Super. Law Div. 2001) was entered in favor of the Estate of Roberta Schwartz ("Estate") under the Slayer Act, N.J. Stat. Ann. §§ 3B:7-1.1 to 3B:7-7. (Second Am. Compl. ¶ 22.)  The Wasserman court found Roberta Schwartz's Estate entitled to a distributive share of the marital estate, including the assets in Stephen Schwartz's retirement and pension plans, such as the Annuity held with AXA, even though those assets were titled in Stephen Schwartz's name alone.  (Id.) The court also found the Estate entitled to an award equal to the amount of taxes that were incurred on the portion of the distribution that came from the pension or retirement accounts of Stephen Schwartz.  (Id.)  The court held that one half of the marital estate was $464,898 and the amount of the tax was $216,440 for a total award to the Estate of $681,338. (Id.)  The Estate ultimately only collected approximately $390,000. (Id. ¶ 23.)

After the Wasserman judgment, the Estate attempted to collect pursuant to the judgment by serving AXA (which was not a party to the Wasserman action) with multiple writs of execution. (Second Am. Compl. ¶ 27.)  In response, on October 24, 2002, AXA

entered into a Consent Order with the Estate.  (Id.)  This Consent Order contained an agreement by AXA to pay to the Estate certain assets held by AXA in the name of Stephen Schwartz if the Wasserman judgment were to be affirmed on appeal, which was pending at the time.  (Oct. 24, 2002 Consent Order, Defs.' Mot. Dismiss Ex. E ¶ 3.)  The judgment was not affirmed on appeal, however, but was instead voluntarily settled between the Estate and Stephen Schwartz's estate on March 14, 2003.[2]  (Second Am. Compl. ¶ 27.)  In the settlement agreement, Stephen Schwartz's estate agreed to "take all necessary steps to transfer all of the assets previously held by Stephen Schwartz" to the Estate. (Order Enforcing Settlement, March 14, 2003, attached to Defs.' Mot. Dismiss Ex. F.)

AXA thereafter paid to the Estate funds titled to Stephen Schwartz in an amount not more than $390,000, though the Second Amended Complaint does not specify precisely how much.  (Id. ¶ 23.)  The Second Amended Complaint is also silent on the mechanism under which AXA paid the Estate: whether it was pursuant to the October 24, 2002 consent order or whether it was at the direction of Jodie Chance, Executrix of the estate of Stephen Schwartz, acting pursuant to the settlement of March 14,

---

[2] Stephen Schwartz died while the Wasserman case was on appeal, prior to the settlement of the case with the Estate of Roberta Schwartz on March 14, 2003.  (See, Order Enforcing Settlement, March 14, 2003, attached to Def.'s Mot. Dismiss Ex. F) (referring to "the Estate of Stephen Schwartz".)

2003.  (<u>See</u> Defs.' Mot. Dismiss Ex. F.)  Regardless, AXA did not repay to the Estate the $93,750 that Mr. Schwartz withdrew on December 20, 1999.  (<u>Id.</u> ¶ 24.)  AXA also did not surrender to the Estate approximately $68,000 held in an account titled in the name of Stephen Schwartz that it claims to have only recently discovered during the pendency of this action.  (<u>Id.</u> ¶¶ 24-25.)

Plaintiff Stephanie Kanter and Stacey Rosen, the two beneficiaries of the Estate, entered into an agreement dated February 13, 2007, under which the Estate's remaining claims, if any, were assigned to them.  (<u>Id.</u> ¶ 28.)  The agreement provided that, as between Plaintiff Kanter and Rosen, whichever beneficiary filed a proceeding of any kind to pursue any such claim of the Estate would have the exclusive rights, title and interest to that claim and any and all recovery thereon, but that party would also be exclusively responsible for all fees and costs incurred in pursuing that claim.  (<u>Id.</u>)  Plaintiff Stephanie Kanter brings this action pursuant to the assignment, under the agreement, of the Estate's interests in the Annuity.

On August 1, 2007, Plaintiff brought this action against AXA in the Superior Court of New Jersey.  AXA removed the action to this Court on September 11, 2007, invoking this Court's diversity jurisdiction.  In October of 2007, Defendants moved to dismiss the Complaint as untimely [Docket Item 7], which the Court granted in an Opinion and Order on April 30, 2008. [Docket Items

7

13 & 14.]  The Third Circuit Court of Appeals subsequently

vacated that Order on March 4, 2010 and remanded the action to

this Court. [Docket Item 19.]  The Third Circuit held that the

six-year statute of limitations had not run as of the date this

action was filed (August 1, 2007) because Plaintiff's injury did

not accrue until the New Jersey Superior Court's September 14,

2001 Wasserman decision had been issued.  Kanter v. Equitable

Life Assurance Society of the United States, 363 F. App'x 862,

867 (3d Cir. Feb. 5, 2010).  Specifically, the Third Circuit

decided that

> the cause of action became complete (and thus
> the statute of limitations began to run) when
> plaintiff  obtained  an  enforceable  legal
> interest  in  the  annuity  by  virtue  of  the
> Wasserman ruling. . . the Estate had no legal
> interest  in  the  annuity  until  the  September
> 14, 2001, decision.

Kanter, 363 F. App'x at 867 n.1.  On June 30, 2010, Plaintiff

filed her Second Amended Complaint.  The Defendants thereafter

moved to dismiss the Second Amended Complaint for failure to

state a claim upon which relief can be granted.  [Docket Item

37.]

    Plaintiff seeks recovery on four counts.  Count One alleges

negligence. (Second Am. Compl. ¶¶ 30-34.)  Count Two alleges

violation of the Slayer Act, N.J. Stat. Ann. §§ 3B:7-1 to 3B:7-7,

which provides a cause of action to the estate of a decedent to

recover property that the killer acquired as a result of killing

the decedent.  The version of the Act in effect in 1999, when

Stephen Schwartz made the withdrawal,[3] provided, in part:

> Any insurance company, bank, or other obligor
> making payment according to the terms of its
> policy or obligation is not liable by reason
> of this chapter unless prior to payment it has
> received at its home office or principal
> address written notice of a claim under this
> chapter.

P.L.1981, c. 405 (C. 3B:7-7); N.J. Stat. Ann. § 3B:7-7 (1999).

Count Three alleges a Consumer Fraud Act violation, pursuant

to N.J. Stat. Ann. § 56:8-2.  (Second Am. Compl. ¶¶ 53-55.)  In

Count Four of the Amended Complaint, Plaintiff asserts that AXA

breached its fiduciary duties in the performance and enforcement

of the Annuity contract when it allowed Stephen Schwartz to

_____

[3] The New Jersey Slayer Act was substantially amended in
2004, after the issuance of the Wasserman judgment but before
Plaintiff filed the instant action against AXA.  See N.J. Stat.
Ann. § 3B:7-1.1; Section 62 P.L.2004, c. 132 (eff. Feb. 27,
2005).  Both parties assume, without analysis, that the
applicable version of the New Jersey Slayer Act in this case is
the pre-amendment version effective in 1999, despite the fact
that the amended version appears to broaden the § 3B:7-7 immunity
for non-slayer defendants such as AXA.  The Court notes, however,
that there may be good authority for application of the amended
version of the statute.  See Sikora v. American Can Co., 622 F.2d
1116, 1128 (3d Cir. 1980) ("In cases pending at the time the law
is changed, or filed thereafter, courts are now bound to apply
the new law unless (1) there is a clear legislative directive to
the contrary; or (2) to do so would cause manifest injustice to
the party adversely affected by the change in law"); Gibbons v.
Gibbons, 432 A.2d 80, 83 n.5 (N.J. 1981) (applying Sikora).  In
the present case, because the parties do not contest it, and
because the outcome is the same regardless of whether the pre-
amendment statute or the post-amendment statute is applied, the
Court will assume without deciding that the 1999 version of the
Slayer Act is applicable here.

withdraw $93,750 and when it lost track of and failed to disclose the remaining $68,000 account. (Id. ¶¶ 57-58.)

## II.  DISCUSSION

### A.   Standard of Review

In deciding the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must look to the face of the Second Amended Complaint -- and undisputedly authentic underlying documents -- and decide, taking all of the allegations of fact as true and construing them in a light most favorable to the Plaintiff, whether her allegations state any legal claim, and "determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); see Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  For Plaintiff to proceed with her claims, the Second Amended Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  In accord with Fed. R. Civ. P. 8(a)(2), a pleading that states a claim for relief need only contain "a short and plain statement

10

of the claim showing that the pleader is entitled to relief." Thus, a plaintiff is obligated to "provide the 'grounds' of his 'entitle[ment] to relief,'" which requires more than "labels and conclusions," but he is not required to lay out "detailed factual allegations." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Therefore, a complaint must contain facially plausible claims, that is, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556.

Following the Supreme Court precedent in Iqbal, the Third Circuit Court of Appeals in Fowler instructs district courts to conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim upon which relief may be granted. Fowler, 578 F.3d at 210-11 (citations omitted). The analysis should be conducted as follows:

> (1) the Court should separate the factual and legal elements of a claim, and the Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; and (2) the Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief, so the complaint must contain allegations beyond plaintiff's entitlement to relief. A plaintiff shows entitlement by using the facts in his complaint.

Id.

11

The Court independently considers whether the claims of Plaintiff, as alleged in the Second Amended Complaint -- containing its four counts -- are sufficient to survive Defendants' motion to dismiss, and draws on its judicial experience and common sense when conducting this context-specific inquiry. See Twombly, 550 U.S. at 556 (holding that a reviewing court's inquiry necessitates that a court draw on its judicial experience and common sense).

Only the allegations in the Second Amended Complaint, matters of public record, orders, and exhibits attached to the Second Amended Complaint are taken into consideration. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). Additionally, without converting this motion to a motion to summary judgment, the "court may consider an undisputedly authentic document . . . if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426-427 (3d Cir. 1999).

**B.   Analysis**

1.   <u>Slayer Act Claims</u>

The Court first reviews whether Plaintiff's Slayer Act claims against Defendant AXA survive Defendants' motion to dismiss.  Plaintiff seeks relief under the Slayer Act to recover two separate assets: (1) the $93,750 AXA allowed Stephen Schwartz to withdraw in December, 1999, after its Secaucus office received written notice of a claimed forfeiture or revocation under the Slayer Act, and (2) the $68,000 AXA recently discovered and failed to previously disclose in an account titled to Stephen Schwartz.

Because the Court is sitting in diversity, it looks to decisions of the state courts of New Jersey to direct its application of the New Jersey Slayer Act.  <u>Spence v. ESAB Group, Inc.</u>, 623 F.3d 212, 216 (3d Cir. 2010) ("[a]s a federal court sitting in diversity, we are required to apply the substantive law of the state whose law governs the action") (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).  As the parties note, however, there are no reported New Jersey cases applying the New Jersey Slayer Act to insurance companies or "other obligor[s]" such as AXA under N.J. Stat. Ann. § 3B:7-7.  The few reported cases in New Jersey applying the Slayer Act have involved the more direct question of whether an intentional killer's acquisition of property after the death of his victim should be

13

prohibited by the Act.  See, e.g., In re Karas, 469 A.2d 99 (N.J.
Super., 1983) (applying N.J. Stat. Ann. 3B:7-2 to bar acquisition
of shared property by husband who had been charged with murdering
his wife).  But see also Bennett v. Allstate Ins. Co., 722 A.2d
115 (N.J. Super. Ct. App. Div. 1998) (applying Slayer Act § 3B:7-
3 to secondary beneficiary under life insurance policy and
reporting that life insurance company was named defendant in case
disputing proper distribution of life insurance proceeds of
murdered insured).

     Thus, in absence of any controlling New Jersey State Supreme
Court decision, or even an intermediate state court or federal
court interpreting the state's law, the Court must turn to
"analogous decisions, considered dicta, scholarly works, and any
other reliable data tending convincingly to show how the highest
court in the state would decide the issue at hand."  Spence, 623
F.3d at 216-17 (quoting Norfolk S. Ry. Co. v. Basell USA Inc.,
512 F.3d 86, 92 (3d Cir. 2008)).

     Plaintiff seeks to recover funds titled in Stephen
Schwartz's name that had been or currently is held by AXA, a
third-party "obligor" under N.J. Stat. Ann. § 3B:7-7 (1999).  The
1999 version of the Slayer Act provided for a private cause of
action by the estate of an intentionally killed person to recover
property, interests, or benefits in which the estate had an
interest which were acquired by the killer under (1) inheritance

14

under a testate or intestate estate (§ 3B:7-1); (2) property
passing by operation of law as a joint tenant or tenant by the
entirety (§ 3B:7-2); (3) life insurance or other contractual
proceeds in the name of the deceased (§ 3B:7-3); or (4) "Any
other acquisition of property or interest" (§ 3B:7-5).  In
addition, the Act provided for a limited cause of action against
an "insurance company, bank, or other obligor" who paid such
assets to the killer after receiving appropriate notice.

> Any insurance company, bank, or other obligor
> making payment according to the terms of its
> policy or obligation is not liable by reason
> of this chapter unless prior to payment it has
> received at its home office or principal
> address written notice of a claim under this
> chapter.

N.J. Stat. Ann. § 3B:7-7 (1999).  Thus, to state a valid claim
under the Slayer Act against an "obligor" such as AXA, Plaintiff
must allege (1) that the Estate had some legal interest in or
claim to the asset; (2) that the asset was acquired by the killer
as described under § 3B:7-1 to § 3B:7-5, (3) that AXA paid the
asset to the killer, and (4) that prior to payment, AXA received
written notice of a claim on the asset under the Slayer Act at
its home office or principal address.

Defendants argue that, regarding the remaining $68,000,
Plaintiff fails to state a claim for recovery under the Slayer
Act because she does not allege that AXA has paid those assets to
the killer.  The Court agrees.  According to Plaintiff's

15

allegations, the remaining $68,000 has not been paid to anyone, much less to Stephen Schwartz.  Thus, Plaintiff has not stated a claim under the Slayer Act for recovery of those assets.[4]

Regarding the $93,750 that Stephen Schwartz withdrew on December 20, 1999, Defendants argue that Plaintiff fails to state a claim for several reasons.  First, Defendants argue that Plaintiff cannot allege that at the time of the withdrawal in 1999 the Estate had any legal interest in the Annuity, citing to the Third Circuit Opinion in this action.  Second, Defendants argue that Plaintiff cannot sufficiently allege that the $93,750 withdrawn by Stephen Schwartz would have been recoverable from the killer himself under the Slayer Act because it was not an "acquisition" under § 3B:7-5.  Third, Defendants argue that the letters and attached orders were not sufficient written notice of Plaintiff's novel Slayer Act claim to recover assets titled in the killer's name under a theory of equitable distribution by homicide in lieu of divorce.  Fourth, Defendants argue that even if the content of the notice was sufficient, the letters sent to AXA's Secaucus, New Jersey office do not meet the statutory requirement that the notice be sent to AXA's "home office or principal address" under § 3B:7-7.  Regarding Defendants' argument that the claim is barred because the Estate had no

_____

[4] While the Slayer Act does not apply to aid recovery of the unpaid $68,000, Plaintiff may have other claims to recover it under New Jersey law, as discussed below.

16

interest in the Annuity at the time of the withdrawal, Plaintiff responds that the Wasserman judgment in 2001 provided the Estate with the entitlement to collect the assets in the Annuity, but the fact that AXA was put on notice of the possible claim before the withdrawal, its action in permitting the withdrawal in 1999 is still actionable under the Act.  The Court finds Defendants' first and fourth arguments persuasive.[5]

First, the Court is bound by what the Third Circuit has necessarily decided in this case.  Arizona v. California, 460 U.S. 605, 618 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.")  As Defendants point out, the Third Circuit held here that Plaintiff's injury under the Slayer Act accrued on the date of the Wasserman court's judgment of September 14, 2001.  Prior to that date, and specifically "[a]t the time of the withdrawal in December 1999, the Estate had no legal interest in or right to the funds in the annuity." Kanter, 363 F. App'x at 866.  The Court went on to hold that "[a]ny suit filed prior to that date [September 14, 2001] would have been premature."  Id.  Such language was not dictum but was essential to the Third Circuit's holding regarding the statute of limitations.

---

[5] As the Court will grant Defendants' motion to dismiss the Slayer Act claim on the basis of the first and fourth arguments, it does not reach the other arguments.

The necessary result of this holding is that Plaintiff cannot state a claim under the Slayer Act against AXA for having paid a standard annuity claim to Stephen Schwartz in 1999, as he was the only person who had any legal claim to those funds at that time.  Plaintiff argues that the notice provided to AXA prior to the withdrawal and the Wasserman opinion saves the claim in this case.  The Court disagrees.  Implicit in the Slayer Act is the requirement that the § 3B:7-7 notice, which normally creates liability for an obligor such as AXA, must be based on a lawful claim to those assets.  For example, in a case where the beneficiary of an insurance plan kills the insured, and the estate of the insured properly notifies the insurer of its Slayer Act claims under the statute, any subsequent payments to the beneficiary could be recovered by the estate under § 3B:7-7.  See Bennett v. Allstate Ins. Co., 722 A.2d 115 (N.J. Super. Ct. App. Div. 1998) (reporting that the estate of the deceased insured initially sued the insurance company under § 3B:7-3 to prevent it from distributing the proceeds of a life insurance policy to the killer's contingent beneficiary rather than the estate of the insured).  However, in such a case, the estate necessarily had a lawful claim to the assets at the time of the withdrawal, and was even capable under New Jersey law of bringing suit directly against the insurer to prevent such a withdrawal.  In the instant case, by contrast, the Third Circuit has held that the Estate had

18

no interest in the Annuity at the time of the withdrawal and was incapable of bringing suit against AXA at the time of the withdrawal because the injury had not yet occurred and such a suit would have been premature.  Kanter at 866.  Consequently, merely serving notice of a claim to which the Estate had no entitlement does not make the withdrawal prior to the entitlement actionable under the Slayer Act.

Thus, even though the Wasserman court subsequently found that Mr. Schwartz had acquired some portion of those funds under a novel theory of equitable distribution upon dissolution of the marriage by homicide, this Court is bound by the decision of the Third Circuit that in December of 1999, the Estate had no interest in those assets.  To state a claim for relief under the Slayer Act, the Plaintiff must be able to allege that the Estate had some legal interest in the contested assets at the time of the withdrawal.  Consequently, the Slayer Act cannot serve as the basis of liability for the withdrawal in this case.

Alternatively, the Court finds that Plaintiff fails to state a claim under the Slayer Act because the notice received by AXA did not comply with the requirements of the statute.  On this point, Defendants argue that, by sending notice to an office other than AXA's principal place of business, the Estate did not provide adequate written notice of a claim as required under § 3B:7-7.  Plaintiff counters that written notice sent to any

office should suffice under the statute because the phrase "home office or principal address" is not defined in the statute nor in New Jersey case law.  The Court concludes that Plaintiff does not adequately allege compliance with the statutory notice requirement.

Plaintiff alleges that AXA's "principal place of business is located at 1290 Avenue of the Americas, New York, New York." (Second Am. Compl. ¶ 8.)  She also alleges that AXA received letters providing notice of a claim under the Slayer Act, which the attached documents demonstrate were sent to an AXA office at 200 Plaza Drive, Secaucus, New Jersey.  (Second Am. Compl. Exs. B and C.)  Defendants argue that because § 3B:7-7 of the Slayer Act requires that notice be received at the defendant's "home office or principal address," only notice received at AXA's "principal place of business" complies with the statute.  Defendants argue that Plaintiff therefore cannot state a claim under the Slayer Act, because she alleges that notice was sent to an address other than the home office.  Plaintiff counters that because the terms "home office" and "principal address" are not defined in the statute or in cases applying § 3B:7-7, the terms are therefore ambiguous and the Court should instead apply the "corporate knowledge doctrine" to find that any notice given to any AXA employee in the course of her employment would satisfy the notice requirement of § 3B:7-7.  This is a legal question of statutory

interpretation which is amenable to resolution on a motion to dismiss.

The Court concludes that the statute is not ambiguous, and that the requirement that notice be received at AXA's "home office or principal address" should not be excused.  Plaintiff argues that, in the absence of a definition of "home address or principal address" within the statute or a New Jersey state court's application, the phrase is ambiguous and should therefore be, essentially, read out of the statute.  The Court concludes, however, that the terms would be clearly understood by the New Jersey State Supreme Court to mean "principal place of business." For example, in Pfizer, Inc. v. Employers Ins. of Wausau, 712 A.2d 634, 642, 644 (N.J. 1998), the New Jersey Supreme Court used the phrase "home office" interchangeably with the phrase "principal place of business" when discussing national corporations such as AXA.  Id.  See also Gimello v. Agency Rent-A-Car Sys., Inc., 594 A.2d 264, 266, 271 (N.J. 1991) (using "home office" and "principal office" interchangeably to mean the principal place of business of a national corporation licensed to do business in multiple states).  See also BLACK'S LAW DICTIONARY, 9th ed. (2009) (defining "home office" as "a corporation's principal office or headquarters").  The Court thus finds that the plain meaning of the phrase "home office or principal address" as used in the New Jersey Slayer Act is the company's

principal place of business, and were the New Jersey Supreme
Court to interpret this section of statute, it would continue to
interpret the term "home office or principal address" in this
way.  To adequately allege a violation of the Slayer Act by AXA,
Plaintiff must allege that written notice was received at AXA's
principal place of business.

Plaintiff's alternative interpretation of the notice
provision of the statute, by contrast, would be rejected by the
New Jersey Supreme Court.  While Plaintiff is correct that no New
Jersey court has interpreted the notice provision of the Slayer
Act, another state's supreme court, interpreting an identical
provision, has interpreted it in a way that rejects Plaintiff's
"corporate knowledge doctrine" argument.  As Plaintiff notes, the
New Jersey Slayer Act was derived from the Uniform Probate Code.[6]
(Pl.'s Opp. Br. at 2.)  (See also, Wasserman v. Schwartz, 836
A.2d 828, 833 (N.J. Super. Ct. Law Div. 2001) (citing to
Wisconsin state court's interpretation of Wisconsin Slayer Act
for purposes of interpreting New Jersey Slayer Act because both
statutes had identical language and were both adopted from the
Uniform Probate Code)).  Thus, the Supreme Court of Alabama's
interpretation of its identical Slayer Act notice provision, in

---

[6] Specifically, the pre-amendment version of the New Jersey
Slayer Act was based on § 2-803 of the Uniform Probate Code.  See
N.J. Stat. Ann. § 3B:7-7 Historical & Statutory Notes ("This
section, prior to the 2004 amendment, was identical to the
pre-1990 version of § 2-803 (f) of the Uniform Probate Code.")

Alfa Life Insurance Corp. v. Culverhouse, 729 So. 2d 325 (Ala. 1999), is persuasive authority for the Court's prediction of how the New Jersey Supreme Court would interpret the statute.  In Alfa, the court rejected a similar imputed notice theory in which the plaintiff sought to satisfy the explicit notice requirements of the statue with oral notice to an insurer's employee.  The Court held that "the pertinent language of § 43-8-253(f) [the analogue to § 3B:7-7] is not ambiguous" and that the corporation's "actual knowledge" should not be substituted for the statute's requirement of "written notice."  Id. at 329.  In Alfa, the plaintiff gave oral notice but not written notice to the insurer (Alfa) that the named beneficiary was the "prime suspect" in the death of the insured, after which Alfa paid the suspected beneficiary despite this notice.  Id. at 326.  The court rejected this argument, holding that it was beyond the court's power to read out of the statute the requirements of both written notice and the requirement that such notice "be directed to the insurer's 'home office or principal address.'"  Id. at 328.

    Similarly, this Court concludes that the plain statutory language requires written notice to be received at the home office or principal address.  Where, as here, the statutory language is plain, the Court must give effect to the clear meaning of that language.  Smith v. Fidelity Consumer Discount Co., 898 F.2d 907, 910 (3d Cir. 1990).  To state a claim,

23

Plaintiff was required to allege that written notice of a claim
under the Slayer Act was received at AXA's home office or
principal address, meaning its principal place of business.
Plaintiff did not so allege.  (Pl.'s Opp'n Br. at 15 n.10 ("the
Second Amended Complaint contains no allegation that AXA received
notice at its 'principal place of business'")).[7]  The Court will,
therefore, grant Defendants' motion to dismiss as to Plaintiff's
Slayer Act claims.

      2.  <u>Consumer Fraud Act Claims</u>

      The Court next addresses the Plaintiff's claims under the
New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 <u>et seq</u>.
("CFA").  Plaintiff alleges that allowing Stephen Schwartz to
withdraw money from the Annuity on December 20, 1999, after
receiving notice that such funds might be subject to the Slayer
Act was an unconscionable commercial practice under the CFA.
Similarly, Plaintiff alleges that losing track of and failing to
disclose the remaining $68,000 after Defendants signed the

_____

    [7] Were this the sole basis to dismiss Plaintiff's Slayer Act
claim, the Court might be inclined to give Plaintiff the
opportunity to conduct limited discovery on the question of
notice.  Such discovery could potentially establish that AXA
received the functional equivalent of the required statutory
notice, if the 1997 and 1999 letters and court orders sent to the
Secaucus office were forwarded to AXA's general counsel's office
or its main office.  Plaintiff has not requested such discovery,
however, and the Court has concluded that it must dismiss the
Slayer Act claims because, as the Third Circuit held, at the time
of the notice and withdrawal, the Estate had no interest in the
Annuity.

October 24, 2002 Consent Order constituted an unconscionable commercial practice under the CFA.

The New Jersey Consumer Fraud Act prohibits "any unconscionable commercial practice" or other such fraudulent behavior "in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such . . . ." N.J. Stat. Ann. § 56:8-2.  New Jersey courts have held that the CFA can apply to consumers of insurance policies, in addition to more traditional consumer goods.  Lemelledo v. Beneficial Management Corp., 696 A.2d 546, 550-51 (N.J. 1997). However, it is well established that the CFA only protects consumers of goods or services which are "generally sold to the public at large."  Narascio v. Campanella, 689 A.2d 852, 856 (N.J. Super. 1997).  Defendants argue that, because Plaintiff does not allege that the Equitable Life Annuity in question was sold to the public at large, Plaintiff fails to state a claim under the CFA.  In support of this proposition, Defendants cite to the Third Circuit case of Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494 (3d Cir. 2006), which held that complex insurance products which were not offered for sale to the public at large were not subject to suit under the CFA.  Cetel, 460 F.3d at 514.

Plaintiff argues, in response, that Cetel only restricts the application of the CFA to consumers of "complex arrangements" and

25

that it therefore has no application to the instant case.   The
Court concludes that Plaintiff has misunderstood the holding of
Cetel.   While the Cetel court does refer to the insurance plans
at issue (the VEBA plans) as complex, the Court finds that the
crucial distinction between the VEBA plans and those that would
fall within the protection of the CFA are that the VEBA plans
were not sold to the general public.

> [B]ecause the entire thrust of the CFA is
> pointed to products and services sold to
> consumers in the popular sense, we cannot
> conclude that the District Court erred when it
> dismissed plaintiffs' claim under the CFA.

Cetel, 460 F.3d at 515.   Consequently, the Court holds that to
state a claim under the CFA, Plaintiff must allege that the
financial product in question was sold to the general public.

Plaintiff does not allege in the Second Amended Complaint
that the AXA Annuity was sold to the general public.   In fact,
Plaintiff alleges the opposite: that the annuity was not sold to
the public.   "[T]he instant Annuity was only available to members
of the American Dental Association. . ."   (Pl.'s Opp'n Br. at
24.)   Regarding the remaining $68,000, Plaintiff does not allege
whether these funds derive from the same American Dental
Association Annuity or some other insurance product that might
potentially be subject to a claim under the CFA.   Should
Plaintiff allege otherwise in a subsequently amended complaint,
the Court will reevaluate this issue.   On the basis of

26

allegations in the Second Amended Complaint, however, the Court must grant Defendants' motion to dismiss for failure to state a claim under the Consumer Fraud Act.

      3.  <u>Negligence Claims</u>

Plaintiff also seeks relief under a theory of common law negligence, alleging that AXA owed the Estate a duty of reasonable care when it received written notice from the Estate in 1999 of a claim under the Slayer Act, which it breached by (1) allowing Stephen Schwartz to withdraw the $93,750 in 1999 and (2) losing track of and failing to disclose the $68,000 after the settlement in 2003.

The Court will grant Defendants' motion against Plaintiff's negligence claim because Plaintiff has insufficiently pleaded the duty that Defendant AXA owed the Estate in her Second Amended Complaint.  To state a claim for negligence, it is not enough for a plaintiff to allege "that defendant did not act with reasonable care and that his carelessness caused injury." <u>Michelman v. Ehrlich</u>, 709 A.2d 281, 286 (N.J. App. Div. 1998) (internal quotations omitted).  "Rather, to establish liability, the plaintiff must demonstrate that the defendant owes him a duty of care." <u>Id.</u>

In the instant action, Plaintiff has alleged a "duty of reasonable care to the Estate of Roberta Schwartz" which arose upon AXA's receipt of the Estate's notice of a Slayer Act claim

27

on Stephen Schwartz's assets.  (Second Am. Compl. ¶ 31.)
Defendants argue that this allegation is insufficient to state a
claim because it does not allege any facts showing the existence
of a duty owed to the Estate.  In response, Plaintiff cites to
cases in which courts in other jurisdictions have held that an
insurance company owes a duty to <u>secondary</u> <u>beneficiaries</u> to pay
the insurance proceeds to the proper recipient.  <u>See</u>, <u>e.g.</u> <u>Glass</u>
<u>v. United States</u>, 506 F.2d 379 (10th Cir. 1974); <u>Lunsford v.</u>
<u>Western States Life Ins.</u>, 908 P.2d 79 (Colo. 1996).  The Court
holds that these cases, if anything, support Defendants' position
that no duty was owed to the Estate, which was not a beneficiary
to the Annuity, at least at the time of the 1999 withdrawal.

Both <u>Glass</u> and <u>Lunsford</u> follow a similar factual pattern.
In both cases, the plaintiffs brought negligence actions against
an insurance company that had paid life insurance proceeds to the
primary beneficiary who later was found to have killed the
insured.  <u>See Glass</u>, 506 F.2d at 380-81; <u>Lunsford</u>, 908 P.2d at
81-82.  In both cases, the plaintiffs were secondary
beneficiaries listed on the life insurance policies.  <u>Id.</u>
Therefore, both cases stand for the proposition that insurance
companies owe a duty to contingent beneficiaries to exercise
reasonable care to disburse insurance policy proceeds to the
proper recipient.  Neither case contemplates a factual situation
like the instant action, where the Plaintiff seeks to expand that

duty beyond contingent beneficiaries on a life insurance policy to any stranger who might in the future be harmed by the distribution of funds.  Therefore, the Court holds that Plaintiff fails to state a claim for common law negligence for the 1999 withdrawal because she does not allege facts which would support the existence of a duty.

For the remaining $68,000, however, Plaintiff may be able to plead the existence of a duty in a subsequent amended complaint. It is possible that the Wasserman opinion and the 2002 consent decree triggered an implied duty on the part of AXA to exercise due care in paying to the Estate any remaining funds held in the name of Stephen Schwartz.  As Plaintiff has not so alleged in the Second Amended Complaint, the Court cannot deny Defendants' instant motion to dismiss, but the Court will dismiss without prejudice to filing a Third Amended Complaint to pursue the remaining funds under a different theory of negligence.

4.  Breach of Fiduciary Duty

Plaintiff's final claim is for breach of fiduciary duty. She alleges that AXA owed the Estate "fiduciary duties" including the "duty of good faith and fair dealing in the performance and enforcement of the Annuity contract."  Here, Plaintiff's allegations suffer from the same shortcoming as her negligence claims.

29

Defendant argues that, to the extent AXA owed anyone a fiduciary duty or a duty of good faith and fair dealing on the Annuity contract, it would have been to Stephen Schwartz, the contracting party.  Plaintiff concedes that in general, the duty of good faith and fair dealing only runs from the insurance company to the insured, but claims, without citing to any supporting authority, that "by operation of the Slayer Act, Stephen Schwartz lost the benefit of AXA's duty of good faith and fair dealing when he intentionally killed Roberta Schwartz.  The Estate stepped into Stephen Schwartz's shoes by virtue of the Slayer Act."  Pl.'s Brief in Opp at 22.

The Court concludes that Plaintiff's novel theory of the transferability of the duty of good faith and fair dealing is not supported by the law.  No New Jersey court has held that an insurer owes a fiduciary duty to a non-party to an Annuity contract.  Cf Webb v. Witt, 876 A.2d 858, 868 (N.J. Super. Ct. App. Div. 2005) (holding that insurer owes fiduciary duty to the insured).  The Third Circuit, interpreting Pennsylvania law, has held that the fiduciary duty owed by an insurer extends only as far as the insured, and does not cover even the policy's beneficiary.  Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh, 776 F.2d 1174, 1177 (3d Cir. 1985).  Additionally, in the absence of a contract, the court will not imply a duty of good faith and fair dealing.  Noye v. Hoffmann-La Roche Inc., 570

A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990) ("In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing").  In the instant case, the Estate was not a party to or beneficiary of the Annuity contract, much less the insured under the contract.  Similarly, AXA was not a party to the Estate's 2003 settlement agreement with the estate of Stephen Schwartz.  Thus, under New Jersey law, AXA owed no fiduciary duty or implied duty of good faith and fair dealing to the Estate.  The Court will therefore grant Defendants' motion to dismiss Plaintiff's claims under the fourth count of the Second Amended Complaint.

Although the Plaintiff's stated legal theory for breach of fiduciary duty is not meritorious, the allegations of the Second Amended Complaint together with the undisputed documents of record strongly suggest that this claim is simply mislabeled. Plaintiff is essentially alleging that the Estate of Roberta Schwartz is the successor to the rights of Stephen Schwartz, including the rights to funds in his name held by AXA, by virtue of the 2003 agreement between the Estate of Roberta Schwartz and the Estate of Stephen Schwartz.  (March 14, 2003 Consent Order, attached to Defs.' Mot. Dismiss Ex. F.)  That consent order pertained to the estate of Stephen Schwartz's agreement "to effect the transfer of all assets previously held in the name of Stephen Schwartz, in which [the Executrix Jodie] Chance or the

31

Estate of Stephen Schwartz hold an interest, to plaintiff's counsel." Id. If Plaintiff is alleging that Plaintiff succeeded to Stephen Schwartz's assets by virtue of this agreement, then Plaintiff has a plausible claim as the owner of such rights that AXA is bound to honor. The present adjudication does not foreclose such a pleading to clarify Plaintiff's contract-related claim. As the Court will dismiss the Second Amended Complaint without prejudice, the Plaintiff will have the opportunity to plead, in a Third Amended Complaint, a claim for the remaining $68,000 under a theory that Plaintiff is the assignee or other owner of the AXA account funds in the name of Stephen Schwartz, and that Plaintiff is entitled to payment of these funds upon demand.

### 5.   Fictitious Defendants and AXA Financial

Finally, Defendants also move to dismiss the fictitious defendants John Doe, XYZ Company, as well as AXA Financial. Because the Court has concluded that it will grant Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim, it is not necessary to decide whether to dismiss these specific defendants.

## III. CONCLUSION

The Court has concluded that Plaintiff's claims to recover the $93,750 withdrawal must fail, in part, because the Estate had

no interest in those funds at the time of the withdrawal.
Likewise, the Court has determined that, as presently pleaded,
Plaintiff also fails to state a claim on which relief can be
granted with respect to the remaining $68,000 held by AXA in
Stephen Schwartz's name.  However, there would seem to be other
legal theories available to Plaintiff to seek the recovery of the
remaining $68,000.  Indeed, it is difficult for the Court to
understand why AXA seemingly continues to contest the payment of
these recently-discovered funds to Plaintiff if she appears to be
the rightful owner of the funds under the October 2002 consent
decree and the March 2003 settlement agreement, but that is an
issue for another day.  Thus, should the parties not settle this
remaining issue following the entry of the accompanying Order,
the Court will permit Plaintiff to file a Third Amended Complaint
for recovery of such funds, consistent with the Opinion above,[8]
within thirty (30) days of the entry of the accompanying Order.
However, for the reasons stated above, the Court must grant
Defendants' motion to dismiss the Second Amended Complaint
without prejudice for failure to state a claim upon which relief

---

[8] Specifically, Plaintiff may elect, consistent with Rule 11
obligations, to file a Third Amended Complaint attempting to
clarify Plaintiff's claim of AXA's negligence (see Part II.B.3 at
p. 29, supra) and Plaintiff's claim of contractual right or
assignment (see Part II.B.4 at p. 31-32, supra) with respect to
the remaining $68,000 on account with AXA in the name of Stephen
Schwartz.  Claims that have been addressed and rejected may not
be repeated in a Third Amended Complaint.

can be granted under Fed. R. Civ. P. 12(b)(6).  The accompanying

Order will be entered.


**March 31, 2011**                        **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     U.S. District Judge

34